UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY PATRICK,

          Plaintiff,                No. 04-CV-73270-DT

vs.                                    Hon. Gerald E. Rosen

STEPHEN VRABLIC,

          Defendant.
_____/

OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     November 16, 2005

PRESENT: Honorable Gerald E. Rosen
                United States District Judge

I. INTRODUCTION

Plaintiff Larry Patrick has brought this Section 1983 excessive force action against Michigan State Trooper Stephen Vrablic alleging that, when Trooper Vrablic placed him under arrest, he handcuffed him too tightly and that, as a result, he sustained severe nerve damage in his right wrist. This matter is presently before the Court on Defendant Vrablic's Motion for Summary Judgment. Plaintiff has responded to Defendant's Motion. For the reasons stated by the Court on the record on November 14, 2005, as

1

more fully developed below, Defendant's Motion will be denied.

## II. PERTINENT FACTS

On June 7, 2003, at approximately 12:30 p.m., Michigan State Police Trooper Stephen Vrablic was working construction zone enforcement on I-94, east of the I-96 interchange, when he was flagged down by a motorist who indicated to him that she had observed a male assaulting a female in another vehicle she had passed while driving on the freeway. As the motorist was relaying this information, she observed the vehicle drive by and indicated this to Trooper Vrablic. Trooper Vrablic immediately pulled out into traffic and eventually was able to pull along side the vehicle. From this vantage point, Trooper Vrablic was able to see that the female passenger had a disheveled look about her; her hair was messed up, her shirt appeared to be torn, she appeared to have been crying and her face was red.

Trooper Vrablic followed the vehicle for approximately five miles, while he waited for other units to respond to assist him. Eventually, he activated his lights and, after other units arrived, he initiated a stop on I-96 in the area of Southfield and Joy Road. The vehicle pulled over and Trooper Vrablic approached the driver's side and asked the driver to step out of the vehicle. The driver, Plaintiff Larry Patrick, complied with the request.

After exiting the vehicle, Mr. Patrick was directed to move the rear of the vehicle where he was patted down and then handcuffed and placed in the rear of Trooper Vrablic's patrol car. Vrablic testified that because of Mr. Patrick''s size (6'2" and 310

lbs.), he interlocked two sets of handcuffs and handcuffed Patrick with the interlocked cuffs.  According to Plaintiff, once he was placed in the patrol car, Trooper Vrablic questioned him about his altercations with his then girlfriend, Anitia Martin, and Plaintiff answered those questions.  He was also given a preliminary breathalyzer test after which Trooper Vrablic informed Patrick that he was under arrest for OUIL and assault.  According to Trooper Vrablic, the entire encounter with Mr. Patrick on the freeway until the time he was placed in the patrol car was 5 to 6 minutes.[1]

According to Patrick, after he was placed in the patrol car, he complained to Trooper Vrablic that "these handcuffs are killing me," to which Vrablic responded that they would be at the station sooner or later.  (According to Vrablic, Patrick never complained about the handcuffs being a problem.)

Trooper Vrablic then proceeded to take Mr. Patrick to the Detroit Police Department's Sixth Precinct.  According to Plaintiff, it took 20 to 30 minutes to get to the station.  Patrick testified that when they got to the precinct, he asked Trooper Vrablic to remove the handcuffs but was told that the handcuffs would be removed after Vrablic's paperwork was done.

Vrablic testified that the handcuffs were taken off once they arrived in the booking room of the 6th Precinct.  At that time, Patrick's personal property was also removed from his pockets, and his shoelaces were removed from his shoes.  Patrick was then

---

[1] Plaintiff Patrick testified that it seemed more like 10-15 minutes to him.

administered a DataMaster breath test after which Trooper Vrablic's contact with Mr. Patrick was ended.

According to Plaintiff, after the handcuffs were finally removed, he noticed that his right wrist was bleeding where the cuffs had cut into his skin. Mr. Patrick was subsequently taken to Detroit Receiving Hospital by members of the Detroit Police Department, after indicating to them that he needed medicine for various conditions that afflicted him (apparently none of which were related to his arrest). Although Patrick indicates that he requested treatment for his wrist when he was taken to DRH, there is no mention in the DRH records of any such request or treatment.

The following day, one of Mr. Patrick's daughters picked him up from the police station. One of his other daughters, Wakishi Benson, saw him the next day. She testified that she was concerned about the cuts and swelling on her father's hand that she noticed. Although Ms. Benson has a medical background (she is a dentist), she did not treat or advise her father that he seek medical treatment. Instead, she testified that she gave him some money for a hotel and for transportation back to his home in Battle Creek.

Two or three weeks after he was arrested, Mr. Patrick still had numbness and swelling, as well as burning and tingling sensations in his right wrist. One of Mr. Patrick's friends, Pat Ragan, testified that she recommended at that time that Mr. Patrick see a doctor about his wrist.[2]

---

[2] Ms. Ragan took pictures of the scar on Mr. Patrick's wrist at that time. These pictures, along with Ms. Ragan's affidavit, have been submitted to the Court.

Mr. Patrick finally went to see his doctor, Dr. Allison Thomas, on June 23, 2003. She diagnosed paresthesia and numbness in Mr. Patrick's right wrist. She then referred him to another physician for an electromyograph. That test, the results of which were reported back to Dr. Thomas, suggested that Mr. Patrick had neuropathy and nerve damage in his right wrist.

Mr. Patrick thereafter filed this lawsuit alleging in his Complaint (1) a Section 1983/Fourth Amendment excessive force claim and (2) a state law gross negligence claim predicated upon the injuries he allegedly sustained as a result of being handcuffed too tightly by Trooper Vrablic. Discovery has now closed and Defendant Vrablic has moved for entry of summary judgment in his favor on Plaintiff's federal claim arguing (1) that because Defendant's actions were reasonable in light of the circumstances, Plaintiff's Fourth Amendment excessive force claim fails as a matter of law and fact, and (2) alternatively, Plaintiff's claims are barred by qualified immunity.[3]

[3] Although Defendant speaks of Plaintiff's "claim***s***" [plural] being barred by qualified immunity, qualified immunity applies only with respect to constitutional claims. Indeed, Plaintiff's discussion of qualified immunity at pp. 7-8 of his brief demonstrates this limitation on the applicability of the doctrine. Defendant did not address Plaintiff's state common law gross negligence claim at all in his summary judgment motion or brief. Therefore, the Court will treat Defendant's motion as one seeking summary judgment only with respect to Plaintiff's federal claim.

III.  DISCUSSION

A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[4]  According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as

---

[4]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

follows:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).  *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  The Court will apply these standards in deciding Defendant's Motion for Summary Judgment in this case.

B.   ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM

Claims regarding police officers' use of excessive force in the context of an arrest or other seizure are governed by the Fourth Amendment.  *See Graham v. Conner*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989).  In *Graham v. Connor*, the Supreme Court established a number of guidelines to be followed by lower courts in evaluating claims

7

alleging excessive force in the course of an arrest or detention. First, because these questions involve seizures, the Fourth Amendment "reasonableness" test is the appropriate standard by which such claims are to be judged. 109 S. Ct. at 1871. The Court continued:

> Determining whether the force used to effect a particular seizure is "unreasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.

109 S. Ct. at 1871-72 (citations omitted). The Court added:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

109 S. Ct. at 1872. *See also Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993); *Leber v. Smith*, 773 F.2d 101, 105 (6th Cir. 1985) ("The issue we must address, then, is whether [the police officer's] actions were reasonable under the Fourth Amendment. . . . [c]onsidering [all] the factual circumstances surrounding the incident in question . . . .), *cert. denied*, 475 U.S. 1084, 106 S. Ct. 1466 (1986); *Damron v. Pfannes*, 785 F. Supp. 644, 647 (E.D. Mich. 1992).

Finally, as the *Graham* Court explained, the state of mind of the officers at the

time of arrest has no bearing on the reasonableness of their actions at the time of the arrest:

> Whatever the empirical correlations between "malicious and sadistic" behavior and objective unreasonableness may be, the fact remains that the "malicious and sadistic" factor puts in issue the subjective motivations of the individual officers, which our prior cases make clear has no bearing on whether a particular seizure is "unreasonable" under the Fourth Amendment.

109 S.Ct. at 1872. *See also, Branham v. City of Dearborn Heights*, 830 F.Supp. 399, 401 (E.D.Mich. 1993).

While the foregoing standards make clear that, depending on the circumstances, some limited force may be reasonable, the record evidence of this case establishes that there exists a genuine issue of material fact regarding the degree of force used by Trooper Vrablic with regard to the arrest and handcuffing of Plaintiff Patrick.

Relying exclusively on this Court's 1995 decision in *Nemeckay v. Rule*, 894 F. Supp. 310 (E.D. Mich. 1995), Defendant Vrablic argues that Plaintiff's excessive force claim predicated upon his having been handcuffed too tightly fails as a matter of law. In *Nemeckay*, the plaintiff was arrested for driving under the influence of alcohol at an excessive speed. After performing poorly on a series of sobriety tests, he was arrested, handcuffed and placed in the back of the defendant's police cruiser. After the handcuffs were placed on Nemeckay, he remained in the cruiser approximately ten minutes before leaving the scene. He was then transported to a local police station, a trip which took an additional 15 minutes.

9

In his complaint, Nemeckay alleged that while he was in the cruiser, he repeatedly told the police officers that his handcuffs were too tight, were hurting his wrists, and were causing him injury.  The defendant police officer, however, testified that she did not recall plaintiff complain that the handcuffs were too tight. Nemeckay claimed that he sustained permanent injury to his wrist as a result of the police officer's failure to loosen the handcuffs.  The only support offered by plaintiff for his allegations, however, was his own deposition testimony.  (At a medical examination conducted during the course of discovery, Nemeckay reported continued occasional weakness and numbness to the thumb area of his right hand.  The examining physician, however, found "no objective evidence of any abnormality in the man's right hand, right wrist or right forearm."  894 F. Supp. 310 n. 1.)

Noting the absence of objective evidence of excessive force, the Court found that the defendant's failure to remove the handcuffs under the circumstances presented in the case did not rise to the level of conduct prohibited by the Fourth Amendment.  The Court explained:

> Something more than negligence or the mere failure to heed a prisoner's complaints must be shown.  If every case in which a person taken into custody with handcuffs were to give rise to a question of constitutional dimension requiring factual inquiry, literally every such case would require submission to the fact-finder.

*Id.* at 315.

In relying on the quoted-excerpt, however, Plaintiff here ignores that in *Nemeckay*

the Court emphasized that "[t]he reasonableness of a particular use of force depends on the 'facts and circumstances of each particular case.'" *Id.*

Here, Plaintiff has proffered more than merely his own testimony of having repeatedly complained to Trooper Vrablic that his handcuffs were too tight as evidence of the use of excessive force. He also has presented evidence of having sustained physical injury. Both Plaintiff's daughter and his friend, Pat Ragan, testified that the swelling and scars on his wrist were still visible two to three weeks after his arrest, and photographs taken by Ms. Ragan bear this out. Further, his doctor testified that Mr. Patrick was still suffering from paresthesia and numbness in his right wrist nearly a month later and an electromyograph showed that he suffered from neuropathy and nerve damage which the doctor opined was the result of being handcuffed too tightly at the time of his arrest in early June. This is far more evidence of excessive force than the mere testimony of the plaintiff of having complained about the handcuffs being too tight which was found insufficient in *Nemeckay* to sustain a Section 1983 claim.

Defendant also entirely ignores the body of Sixth Circuit precedent that has developed in this area since the time of this Court's *Nemeckay* decision. *See e.g., Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997); *Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001); *Neague v. Cynkar*, 258 F.3d 504 (6th Cir. 2001); *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002); *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005); *see also Meadows v. Thomas*, 117 Fed. Appx. 397 (6th Cir. 2004); *Grooms v. Dockter*, 1996 WL

26917 (6th Cir. 1996) (unpublished opinion; text available on WESTLAW). These post-1995 appellate court decisions further establish that summary judgment in this case would be inappropriate.

For example, in *Martin v. Heideman*, the Court of Appeals reversed the district court's directed verdict in favor of the defendant police officer on the plaintiff's claim that the officer had handcuffed him too tightly. The appellate court found that an issue of fact existed as to whether the officer used excessive force under the circumstances where the plaintiff presented evidence in the form of his own testimony that, after he was handcuffed, he complained to the officer several times over the course of a 35-minute period -- 20 minutes in the police cruiser and 15 minutes in a holding cell at the police station -- that the handcuffs placed on him were too tight and that his hands were becoming numb and were swelling. The plaintiff also presented the deposition testimony of his family physician about the emergency room records on the day after his arrest which showed that the plaintiff complained of a sore wrist and contusions on his right arm, and the deposition testimony of an orthopedic surgeon who had diagnosed the plaintiff as having nerve entrapment neuropathy.

The Sixth Circuit also reversed the district court's grant of summary judgment for failure to state a claim in favor of the defendant police officers in *Kostrzewa v. City of Troy*. In that case the plaintiff pointed to his repeated complaints to the officers that the handcuffs placed on him were too tight and were causing him pain and evidence that

12

when he was taken to the hospital for treatment after being booked, his wrists were extremely swollen, red and painful for which the doctor recommended that his wrists be elevated and that ice be applied to reduce swelling. Based upon the foregoing, the appellate court determined that "there is no question that [the plaintiff] has stated a legally sufficient claim for which relief can be granted." 247 F.3d at 641.

By contrast, in *Neague v. Cynkar*, the Court of Appeals reversed the district court's denial of the defendant's motion for summary judgment in a handcuffing/excessive force case because of the absence of evidence of physical injury to the plaintiff due to his being handcuffed by the police. The court explained:

> Plaintiffs do not allege physical injury from the handcuffing, which lasted at most thirty-three minutes; the police loosened the cuffs when Jonathan so requested. In fact, Carol Neague agreed in her deposition that she was "not claiming any physical injury as a result of the handcuffing."
>
> This court's opinion in *Kain v. Nesbitt*, 156 F.3d 669 (6th Cir. 1998), supports our view that the handcuffing of a person in the course of an otherwise lawful arrest fails as a matter of law, to state a claim for excessive force. * * *
>
> . . . We now make explicit what this court in *Kain* implied: when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment.

258 F.3d at 508. *See also, Burchett v. Kiefer*, *supra* ("Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight." 310 F.3d at 944-45); *Lyons v. City of Xenia*, *supra* ("Not all allegations of tight

13

handcuffing, however, amount to excessive force. In order to reach a jury on this claim the plaintiff must allege some physical injury from the handcuffing, and must show that officers ignored plaintiff's complaints that the handcuffs were too tight." 417 F.3d at 575 (citations omitted).)

Summarizing the law extrapolated from the foregoing precedents, in *Meadows v. Thomas*, the court stated that, for a plaintiff to establish a viable Fourth Amendment claim for excessively forceful handcuffing, he must:

> (1) allege that he complained to the officers that the handcuffs were too tight (or that there is evidence to infer that the officers should have known that the handcuffs were too tight); and (2) as a result of being left in handcuffs that were applied too tightly, he incurs injury to his wrists.

17 Fed. Appx. at 405.

Plaintiff in this case has met this standard. Therefore, to the extent that Defendant's motion for summary judgment is predicated upon his claim that Plaintiff's excessive force claim fails as a matter of law and fact, the motion for summary judgment is denied.

C. FACTUAL ISSUES ALSO PRECLUDE SUMMARY JUDGMENT ON QUALIFIED IMMUNITY GROUNDS

Under the doctrine of qualified immunity, a police officer will not be held liable on a plaintiff's claim for civil damages under Section 1983 so long as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer in the defendants' position would have known. *See Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); *Kostrzewa v. City of Troy*, supra, 247 F.3d at 641. The Sixth Circuit has held that the right to be free from excessive force, including "excessively forceful handcuffing," is a clearly established right. *See, Martin v. Heideman, supra*, 106 F.3d at 1313; *Kostrzewa v. City of Troy, supra*; *Walton v. City of Southfield*, 995 F. 2d 1331, 1342 (6th Cir. 1993).

As explained by the *Kostrzewa* court,

> When making a qualified immunity analysis, it is important to remember that the defendant is, in essence, saying: "If the plaintiff's version is credited, what I did, judged *today*, *arguendo* would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully." As this circuit has analyzed the qualified immunity issue in excessive force cases, the question of whether the reasonable officer would have known his conduct violated clearly established constitutional rights can be answered by the initial inquiry of whether the officer's use of force was objectively reasonable. It is clear from this circuit's analyses in various excessive force decisions that, having concluded that the right to be free from excessive force is clearly established, whether we grant qualified immunity in a particular case depends upon whether the officer did, in fact, use excessive force. (*i.e.,* force that was not objectively reasonable). To put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful.

247 F.3d at 641-42 (citations omitted). *See also Martin v. Heideman, supra* (where a genuine issue of fact exists as to whether the defendant police officer used excessive force in handcuffing the plaintiff, it is error to grant the officer qualified immunity. 106 F.3d at 1313).

As in *Martin* and *Kostrzewa*, in this case a genuine issue of fact exists as to

15

whether Defendant Vrablic's handcuffing of Plaintiff amounts to excessive force. This same factual issue precludes summary judgment on qualified immunity grounds.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is DENIED.

        s/Gerald E. Rosen
        Gerald E. Rosen
        United States District Judge

Dated: November 16, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 16, 2005, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager